UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

BRENDA PAYNE                                                                          PLAINTIFF

v.                                                                    CIVIL ACTION NO. 3:11CV-189-S

UNITED STATES POSTAL SERVICE                                          DEFENDANT

## MEMORANDUM OPINION

This action arose an injury allegedly suffered by the plaintiff, Brenda Payne, while using a

parcel drop box at the United States Post Office in St. Matthews, Kentucky.  Payne claims that the

drop box posed an unreasonably dangerous risk of injury to patrons of the post office, and that the

defendant, the United States Postal Service ("USPS") failed to remediate the alleged danger or to

adequately warn her of it.

USPS has moved for summary judgment, urging that Payne has failed to adduce evidence

identifying an unreasonable danger posed by the drop box and has not identified an inadequacy in

the warning posted on the rotating barrel of the box.

A party moving for summary judgment has the burden of showing that there are no genuine

issues of fact and that the movant is entitled to summary judgment as a matter of law.  *Adickes v.*

*S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*,

536 F.2d 1126, 1134 (6th Cir. 1976).  Not every factual dispute between the parties will prevent

summary judgment.  The disputed facts must be material.  They must be facts which, under the

substantive law governing the issue, might affect the outcome of the suit.  *Anderson v. Liberty*

*Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).  The dispute must also be genuine.  The facts must be

such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* At 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

This action is brought against USPS under the Federal Tort Claims Act ("FTCA"). The FTCA grants a limited waiver of the United States' sovereign immunity, permitting tort claims against the United States "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995). The parties agree that, in this case, the court must look to the law of Kentucky where the accident occurred to determine whether the plaintiff has a viable tort claim.

The Supreme Court of Kentucky recently reiterated that, "as a general rule, land possessors owe a duty to invitees to discover unreasonably dangerous conditions on the land and to either correct them or warn of them." *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385, 388 (Ky. 2010). In *McIntosh*, the Kentucky Supreme Court adopted the Restatement (Second) of Torts § 343A(1) which states that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Id.* at 389.

Payne alleges that USPS "owed a duty to make the [Shelbyville Road post office][1] safe and/or to warn of all dangers...[USPS] did not maintain the Property in a safe condition or warn of the dangerous condition present thereon...As a direct and proximate result of [USPS's] negligence, and failure to properly correct a dangerous condition it created on the Property, Ms. Payne sustained serious and permanent personal injuries..." Amend. Comp., ¶¶ 19-21. Paragraph 8 of the Amended Complaint contains the sole factual allegation concerning Payne's encounter with the drop box:

> On or about June 28, 2008, Ms. Payne was injured when a steel mailbox receptacle on the Defendant's premises slammed shut on her left hand.

Discovery closed in the case. Thus USPS contends that because Payne has failed to identify an unreasonable danger presented by USPS or its drop box, she cannot establish a breach of any duty owed by USPS to her. This court agrees.

A possessor of land is liable for injuries to invitees (1) from hidden dangers which he fails to correct or of which he fails to adequately warn, and (2) from open and obvious dangers which he should anticipate will cause the harm to his invitee despite the obviousness of the risk. *See McIntosh, supra.* Thus, in order to determine whether USPS had a duty to Payne in this case, she must first identify a danger from which she alleges she was not protected.

In support of its summary judgment motion, USPS offered the testimony of postal worker Michael Tomes, who inspected the drop box shortly after Ms. Payne was injured. He testified that he

> tried to figure out how she could have slammed her finger into it, so I opened it and shut it, looked at the warning sign. And like I said, I opened it and – and for the – I don't see how she could have shut her finger in the [drop box]. But that – that's what

---

[1] Payne claims that the postal service owed a duty to make "the Property" safe. The Amended Complaint defines "the Property" as the post office, not specifically the drop box in issue. See, Amend. Compl., ¶¶ 2; 19.

I did, I opened it and shut it and took pictures of the warning sign, and that's what occurred.

Tomes depo., p. 20.

During discovery in this case, Payne answered interrogatories which asked her to describe how the incident occurred and then to state specifically all facts upon which she relies to support her claim that the USPS acted negligently.  In describing the events, she stated:

On June 28 2008, Plaintiff entered the premises of Defendant's Post Office located at 4600 Shelbyville Road, Louisville, Kentucky 40207 for the purpose of depositing out-going mail.  Plaintiff opened the steel mailbox receptacle by its lever handle with her right hand and placed her mail inside the mailbox with her left hand.  Before Plaintiff could remove her left hand from inside the receptacle, the lever handle snapped shut on Plaintiff's left hand, which resulted in injuries to her left index finger and middle finger.

Interrog. Ans. No. 12 (DN 24-9).  In stating the facts upon which she relies for her claim, she stated:

See answer to Interrogatory No. 12.  As discovery is still ongoing, Plaintiff has not yet identified all facts upon which she will rely at trial to support her allegations.  Furthermore, Plaintiff is not an expert on tort law in Kentucky and may present expert testimony that would be responsive to this Interrogatory.  Plaintiff is available for her deposition to expand upon the facts presented, her injuries and the effect on her life.

Interrog. Ans. No. 13 (DN 24-9).  Apparently, Payne has not amended nor supplemented these interrogatory answers.  She did not provide any expert testimony concerning the drop box or the purported slamming incident in question.

There were no eye witnesses to the occurrence besides Payne herself.  Her deposition was taken, and she gave the following testimony:

Q:     When you approached the parcel drop box that day, do you remember if it was open or closed, or what position it was in?

A:     It was closed.

- 4 -

Q:      And why do you remember that?

A:      Because I had to use the handle to open it.
...
Q:      Can you describe how the lever worked?

A:      It was the first time that I ever used it, because I had a little trouble with my
        right arm, lifting it up.  Took my right arm, had the package in my left hand.
        I took my right hand and pulled down the lever, and I put the package in like
        that.  I'm going to be as honest as I can.  I don't know if when I pushed the
        lever down, if it was supposed to lock and didn't, or what.  All – the next
        thing I know, I was in shock.

Q:      Why did you use the left-handed lever with your right hand?

A:      Because I told you, and I still have difficulty sometimes lifting my right
        shoulder.  I have limited mobility from the 2005 injury...and I know it was
        awkward, but that's what happened.

Q:      Did you approach the parcel bin from the front or from the side?

A:      From the side.

Q:      From which side?

A:      Where the lever was.

Q:      And you had your package in your left hand?
...
A:      Yes.
...
Q:      And you were able to reach the lever handle with your right hand, correct?
...
A:      Yes.

Q:      ...And you pulled it down to the bottom; is that correct?  How far down did
        you pull it?

A:      I thought I pulled it down all the way.

Q:      And when you put the package in with your left hand; is that right?

A:      Yes.

- 5 -

Q:    And when you put the package in, did you still have your hand on the lever handle?

A:    I don't recall, and I'm being honest.
...
Q:    Are you right-handed or left-handed?

A:    Right.

Q:    And it was a conscious decision to hold the package in your left arm because of your right shoulder problems?
...
A:    ...And I used my right hand, because it was limiting me to a degree, and the box was heavier and awkward, and so I used my left hand...And my hand was like this, and it slammed al l– and I don't – I can't tell you how I freed my hand.  I was in shock.  When you're in shock, you don't remember anything.

      ...I wondered how did – what did – how did it go wrong.
...
Q:    ...Do you remember if you released your right hand from the lever or kept your right hand on the lever handle?

A:    I have to be honest.  I cannot remember.

Q:    And do you know if your hand, your left hand, went over the front rim of the barrel where the yellow sticker currently is, or did it go over the side of the barrel?

A:    I don't know.  I just remember, whoo, and because I had just placed it, it just released.  And I don't know if I – if it didn't click, if I left my right hand up to the ceiling, or what.  It just slammed.

Q:    Is it possible that you lifted with your right hand as you were putting the package in with your left hand?

A:    No, I didn't lift it up, but it may not have securely locked.
...
Q:    And you believe that the barrel went back up towards the wall?

A:    Yes.
...
Q:    You believe that area went back up towards the wall and pinched your finger between the wall and the barrel?

A:      I believe so.

Q:      But you don't have a specific recollection?

A:      I was in shock from the pain.

Q:      And you don't have a specific recollection?

A:      Exactly.  I told you, I don't even know how I got my hand out, unless I
        pushed that lever down again with my right hand.
...
Q:      Do you remember, before the – your hand was caught, do you remember
        seeing the door – the bin shutting and trying to react to it, or were you
        surprised?

A:      Surprised.

Q:      Okay, so you didn't see the bin close, you just felt it?

A:      Yes.
...
Go back to the warning sign here that is Exhibit 2...It says "Use the handle to open
and close the drop box."  You used the handle on the lever to open the drop box,
correct?

A:      Yes.

Q:      Did you use the handle on the lever to close the drop box?

A:      I don't believe so.

Payne Depo., selected text, pp. 83-129.

        Payne has not come forward with any evidence, nor has she argued, that the drop box

malfunctioned or was in a defective condition at the time she encountered it.  The only evidence

concerning the condition of the drop box came from Tomes who inspected it, opened it and closed

it, viewed and photographed the warning label on it, and did not identify any problems with its

operation.  There is no evidence of a malfunction or defective condition.  However, there is a

complete absence of evidence concerning the structure and operation of this device.

Payne contends that the drop box, as she encountered it on that day, posed an unreasonable danger[2] from which she was not protected nor adequately warned because it "slammed shut" on her hand.  It is insufficient to establish liability against USPS for Payne to simply state that she was injured while using the drop box at the post office.  USPS, as the possessor of land, is not tasked with ensuring complete safety on its property.  It is required to discover unreasonably dangerous conditions on the land and either correct them or warn of them.  *McIntosh*, 319 S.W.3d at 388.  Thus it is imperative that Payne identify *how* she was injured before it can be determined whether USPS had any duty it was required to discharge under the circumstances.

Payne claims only that the drop box "slammed shut."  Payne testified that she has no recollection of the incident after she opened the barrel with the lever and placed her parcel in the bin in an admittedly cross-handed and awkward fashion.  She does not remember whether she removed her hand from the lever, but she does not believe that she used the lever to close the barrel.  She speculates that maybe the box "failed to lock" when she lowered the handle.  However, there is no evidence in the record to support such a theory, as no witness, expert or lay, has testified as to the structure or operation of the drop box, or whether it was designed to "lock."

Payne bears the burden to prove her claim against USPS.  Payne herself has admitted that she has no recollection of the occurrence.  She has no recollection of what she did or where her hands were after she dropped the package into the opening.  As no evidence has been adduced to support this slamming shut theory, it is impossible to ascertain whether an unreasonably dangerous condition existed for which USPS had a duty to repair or warn.  The inability to ascertain the means by which

---

[2]While Payne contends in her complaint that USPS had a duty "to make the Property safe and/or to warn of all dangers," (Amend. Comp. ¶19), this is clearly not the law in Kentucky.

the alleged "slamming shut" of the barrel occurred is fatal to her claim.  She claims that the barrel "slammed shut," yet she did not see the barrel shut, has no recollection of her own actions at the time, and has failed to adduce evidence concerning the operation of the box itself, a malfunction, or any defect.

No genuine issue of material fact exists in this case, and USPS is entitled to judgment as a matter of law.

Alternatively, were we to find a genuine issue of material fact concerning the slamming shut theory, we would still conclude that USPS is entitled to summary judgment in this matter.  Assuming an unreasonable and otherwise hidden danger existed in Payne's use of the drop box, USPS warned her of this danger and provided the procedure to be employed to avoid injury.  The yellow warning label became visible to the user of the drop box as the handle was lowered and the bin opened to receive parcels.

Payne contends that she did not see the warning label, but she also testified that she approached the drop box from the side, used the opposite (right) hand to pull the left-handed lever, and reached across with her left hand to drop the parcel into the bin.  Were we faced with the question, the court would find that the warning placed on the barrel of the drop box was  adequate under the circumstances.  Payne does not argue that the warning was inadequate in any way. Further, Payne's injury from a cross-handed and awkward approach from the side of the box to deposit a parcel was not foreseeable, and therefore no additional duty was owed to her.  Therefore, even if we found that a genuine issue existed with respect to the presence of an unreasonable danger, we would still conclude that no genuine issue of material fact exists and USPS is entitled to judgment as a matter of law.

For the reasons stated herein, summary judgment will be granted in favor of USPS.  A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

January 15, 2013

**Charles R. Simpson III, Judge**
**United States District Court**